193 S.W.3d 197 (2006)
In the Interest of Z.A.T., K.M.T. & K.O.T., Children.
No. 10-04-00347-CV.
Court of Appeals of Texas, Waco.
April 5, 2006.
Rehearing Overruled May 23, 2006.
*201 Richard Owen Taylor, Tennessee Colony, pro se.
*202 Christopher Chance, Waco, for appellee/respondent.
Monita R. Sharkey, Atty. Gen. of TX/Child Support Division, Waco, for Children.
Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

LEAD OPINION
FELIPE REYNA, Justice.
Appellant Richard Owen Taylor complains of the trial court's order modifying the provisions of a divorce decree regarding Appellee Valerie Annette Taylor's and his parental rights and duties. Richard presents twenty-four issues in which he generally contends: (1) the court abused its discretion by denying his request for a jury trial; (2) the court abused its discretion by denying his motion to order Valerie to bring the children to the trial and by denying him a continuance due to the absence of a witness; (3) the court abused its discretion by limiting his impeachment of Valerie and by excluding certain evidence; (4) there is no evidence or factually insufficient evidence to support the court's findings of fact and the court's conclusions of law are erroneous; (5) the court abused its discretion by modifying the parties' parental rights and duties in the manner it did; and (6) the court abused its discretion by denying his motion for new trial. The judgment will be affirmed.

Background
Richard's and Valerie's divorce decree was rendered in December 2002. At the time, Richard was imprisoned, and he remains so under a forty-year sentence. The decree named Valerie as sole managing conservator of their three children and named Richard as possessory conservator. The decree gave each of them the standard rights and duties attendant to his or her respective conservator status. However, the decree recognized that Richard could not currently exercise some of his rights because of his incarceration. Thus, the decree also provided that many of Richard's possessory rights would commence thirty days after his release.
Richard has filed numerous pleadings and instituted numerous proceedings (both before and after the final divorce decree) with respect to his parental and custodial rights. See In re Taylor, 28 S.W.3d 240 (Tex.App.-Waco 2000, orig. proceeding); In re Taylor, 39 S.W.3d 406 (Tex.App.-Waco 2001, orig. proceeding); In re Taylor, 45 S.W.3d 357 (Tex.App.-Waco 2001, orig. proceeding); Taylor v. Taylor, 63 S.W.3d 93 (Tex.App.-Waco 2001, no pet.); In re Taylor, 110 S.W.3d 67 (Tex.App.-Waco 2003, orig. proceeding) (per curiam).
This appeal concerns Richard's petition to modify the conservatorship provisions of the decree. Among other things, Richard seeks: (1) more notice of activities in which the children are involved; (2) more information about physicians and other caregivers; (3) more involvement in making decisions regarding the children's well-being; (4) more prompt notice of emergencies and of the children's activities; (5) to have his parents named possessory conservators; (6) to restrict the children's residence to McLennan County; and (7) a permanent injunction prohibiting Valerie and others from contacting the Department of Criminal Justice, Institutional Division, or the Board of Pardons and Paroles regarding any alleged misconduct on his part.
Valerie filed a competing petition to modify the decree. She asked that Richard's rights be limited "to prevent further abuse of the court system" by his "vexatious litigation." She requested a permanent injunction prohibiting Richard or anyone *203 acting in his behalf from removing the children from McLennan County and from communicating with Valerie or the children other than through her attorney or some other designated person.
After a hearing, the court granted Valerie's petition and denied Richard's. Richard's parents informed the court in a letter that they would not pursue possessory conservatorship.

Modification of Decree
Richard contends in his nineteenth through twenty-second issues that the court abused its discretion by granting Valerie's petition and denying his own. He contends in his twelfth through eighteenth issues that there is no evidence or factually insufficient evidence to support twenty-two of the court's findings of fact and conclusions of law. He contends in his twenty-third issue that there is no evidence or factually insufficient evidence to support the modification order.
A trial court has broad discretion in child custody matters. Pena v. Pena, 8 S.W.3d 639, 639 (Tex.1999) (per curiam); In re J.R.P., 55 S.W.3d 147, 151 (Tex. App.-Corpus Christi 2001, pet. denied). Thus, we review child custody orders under an abuse-of-discretion standard. See In re T.J.S., 71 S.W.3d 452, 458 (Tex.App.-Waco 2002, pet. denied); J.R.P., 55 S.W.3d at 151.
We do not conduct an independent review of findings of fact in a child custody case under traditional legal and factual sufficiency standards. See In re J.C.K., 143 S.W.3d 131, 135 (Tex.App.-Waco 2004, no pet.); London v. London, 94 S.W.3d 139, 143-44 (Tex.App.-Houston [14th Dist.] 2002, no pet.); cf. Norris v. Norris, 56 S.W.3d 333, 338 (Tex. App.-El Paso 2001, no pet.). Rather, legal and factual sufficiency are factors which can be considered in determining whether an abuse of discretion has occurred. J.C.K., 143 S.W.3d at 135; London, 94 S.W.3d at 143-44; accord Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.1991).
In re A.C.S., 157 S.W.3d 9, 20 (Tex.App.-Waco 2004, no pet.).
Section 156.101(1) of the Family Code[1] provides:
The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and:
(1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:
(A) the date of the rendition of the order; or
(B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based.
TEX. FAM.CODE ANN. § 156.101(1) (Vernon Supp.2005).
There was no settlement in this case, so the two relevant issues are: (1) whether the requested modifications would be in the best interest of the children; and (2) whether there has been a material change of circumstances since the rendition of the divorce decree.
*204 Richard concedes in his brief that "the circumstances of a child or one or both of the conservators have materially and substantially changed since the divorce" and that the only disputed issue is whether the modification is in the best interest of the children.
Valerie's petition alleges that limiting Richard's rights and duties would be in the best interest of the children, and the court so found.[2] From Valerie's and Richard's testimony, the court could conclude that the provisions of the divorce decree imposed an unreasonable hardship on Valerie and the children, particularly in the manner in which Richard insisted that Valerie comply with those provisions. Richard conceded on cross-examination that he has "continually used the rights and duties of the parent in order to launch lawsuit after lawsuit against Valerie."
Factors which may be considered in deciding what is in the best interest of a child include:
(1) the desires of the children, (2) the emotional and physical needs of the children now and in the future, (3) the emotional and physical danger to the children now and in the future, (4) the parental abilities of the individuals involved, (5) the programs available to those individuals to promote the best interest of the children, (6) the plans for the children by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent.
A.C.S., 157 S.W.3d at 24 (citing Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976); In re C.R.O., 96 S.W.3d 442, 451 (Tex. App.-Amarillo 2002, pet. denied); Bates v. Tesar, 81 S.W.3d 411, 434 (Tex.App.-El Paso 2002, no pet.)).
A child's best interest cannot be determined in a vacuum. Although consideration of the visitation rights of the noncustodial parent is important, we must primarily concentrate on the general quality of life for both the child and the custodial parent in assessing whether a change is positive and in the child's best interest.
Id. at 24-25 (quoting Echols v. Olivarez, 85 S.W.3d 475, 482 (Tex.App.-Austin 2002, no pet.)).
When the evidence is viewed in light of these considerations, I conclude that there is some evidence and factually sufficient evidence to support the court's determination that the modifications would be in the best interest of the children. Thus, it cannot be said that the court abused its discretion by modifying the decree as it did. Accordingly, Richard's nineteenth through twenty-third issues are overruled.
There is no need to address Richard's twelfth through eighteenth issues, which challenge twenty-two of the court's findings of fact and conclusions of law, because the legal and factual sufficiency of the evidence was considered in determining whether the court abused its discretion in modifying the divorce decree. See A.C.S., 157 S.W.3d at 20.

Jury Trial
Richard contends in his first issue that the court erred by denying his request for a jury trial. He complains that he was improperly denied a jury on the issues of: "1) whether deleting and removing the rights and privileges of Appellant would be a positive improvement for the children; 2) whether specifying the rights and privileges *205 of Appellant would be a positive improvement for the children; 3) whether modifying the possession of and access rights would be a positive improvement for the children; and 4) whether the residence of the children should be restricted."
The denial of a jury request is reviewed under an abuse-of-discretion standard. Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex.1996); Taylor, 63 S.W.3d at 101. In so doing, the entire record is reviewed to determine whether the denial "is arbitrary, unreasonable, and without reference to guiding principles." Id.
The version of section 105.002 of the Family Code applicable to this case[3] provides in pertinent part:
(c) In a jury trial:
(1) a party is entitled to a verdict by the jury on the issues of:
(A) the appointment of a managing conservator;
(B) the appointment of joint managing conservators;
(C) the appointment of a possessory conservator; and
(D) the determination of the primary residence of the child;
(2) a party is not entitled to a jury verdict on the issues of:
(A) child support;
(B) a specific term or condition of possession of or access to the child; or
(C) any right or duty of a possessory or managing conservator, other than the issue of primary residence determined under Subdivision (1)(D).
(3) the court may submit to the jury an issue described by Subdivision (2).
(d) The court may not contravene a jury verdict on an issue submitted under Subsection (c)(1). A jury verdict on an issue submitted under Subsection (c)(3) is advisory only.
Act of May 8, 1997, 75th Leg., R.S., ch. 180, § 1, 1997 Tex. Gen. Laws 1033, 1033-34 (amended 2003) (current version at TEX. FAM.CODE ANN. § 105.002(c) (Vernon Supp. 2005)) (hereinafter, "section 105.002").
As Richard concedes in his brief, only an advisory jury verdict would be permitted for most of the issues on which he contends he was entitled to a jury, because these issues involve either (1) the terms and conditions of possession of or access to the children or (2) the parties' respective rights and duties. Id. It is not reversible error to deny a jury request on issues for which the jury's verdict would be only advisory. See Martin v. Martin, 776 S.W.2d 572, 575 (Tex.1989); In re Marriage of Richards, 991 S.W.2d 32, 36 (Tex.App.-Amarillo 1999, pet. dism'd).
Only his request that the children's primary residence be restricted to McLennan County is included within the matters for which a party may obtain a binding[4] *206 jury verdict under section 105.002. See In re D.R.S., 138 S.W.3d 467, 470-71 (Tex. App.-Houston [14th Dist.] 2004, pet. denied). Because the court denied Richard's request for a jury trial and because Richard's request for a restriction on the children's primary residence is an issue for which a binding jury verdict may be obtained under section 105.002, I conclude that the court abused its discretion by denying Richard's jury request. See In re Shaftner, 900 S.W.2d 439, 441-42 (Tex. App.-Texarkana 1995, no writ).
Nevertheless, this error does not require reversal if "the record shows that no material issues of fact exist and an instructed verdict would have been justified." Halsell v. Dehoyos, 810 S.W.2d 371, 372 (Tex.1991) (per curiam); Taylor, 63 S.W.3d at 101.
The only evidence offered in the hearing pertinent to the issue of the children's primary residence was presented during the cross-examination of Richard by Valerie's counsel. Richard testified that any move by Valerie (and the children) would limit his "reasonable contact with the children" because, if she moved, he "would have no way to contact any officials regarding information with the children."[5] As Valerie's counsel observed (but Richard disputed) however, any limitations on Richard's contacts with "officials" would not equate to limitations on his contacts with the children.
Accordingly, I conclude that Richard presented no evidence to justify a restriction on the children's primary residence. Because he presented no evidence on this issue, the improper denial of his request for a jury trial does not require reversal. See Halsell, 810 S.W.2d at 372; Taylor, 63 S.W.3d at 101. Thus, Richard's first issue is overruled.

The Children's Failure to Appear as Witnesses
Richard contends in his second issue that the court abused its discretion by denying his pretrial motion "to require [Valerie] to bring the children to [the modification hearing]."[6] He contends in his third issue that the court's "exclusion" of the children's testimony violated his right to due process.
Richard did not request the issuance of subpoenas to compel his children's presence at the hearing. I believe this is fatal to his contention.
Rule of Civil Procedure 176.8 provides:
(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.
(b) Proof of Payment of Fees Required for Fine or Attachment. A fine may not be imposed, nor a person served with a subpoena attached, for failure to comply with a subpoena without proof by affidavit of the party requesting the subpoena or the party's attorney of record that all *207 fees due the witness by law were paid or tendered.
TEX.R. CIV. P. 176.8.
If a witness who has been subpoenaed fails to appear for trial, the trial court may issue a writ of attachment to compel his attendance. See id. 176.8(b). However, if a proposed witness was not subpoenaed by the party seeking to present his testimony, it would "be improper" for a court to issue a writ of attachment. See Thompson v. Thompson, 380 S.W.2d 632, 639 (Tex.Civ.App.-Fort Worth 1964, no writ); see also Fritsch v. J.M. English Truck Line, Inc., 151 Tex. 168, 246 S.W.2d 856, 859 (1952) ("If parties choose to forego their rights under [the Rules of Civil Procedure] and resort to other and less effective and less certain means of procuring the testimony of material witnesses they must be held to do so at their own risk and with foreknowledge that they may be put to trial without the benefit of the testimony.").
A subpoena is the proper means to secure the attendance of a witness for trial. If the witness fails to comply, then the trial court may issue a writ of attachment to compel the witness's attendance.[7] Parties who fail to follow these procedures "do so at their own risk and with foreknowledge that they may be put to trial without the benefit of the testimony." See Fritsch, 246 S.W.2d at 859.
The difficulty here is that there is no statute or rule which provides for the issuance of a subpoena for a child to testify in a civil trial. The Code of Criminal Procedure expressly provides for the subpoena of a child witness by "a subpoena directing a person having custody, care, or control of the child to produce the child in court." See TEX.CODE CRIM. PROC. ANN. art. 24.011(a) (Vernon Supp.2005). The Juvenile Justice Code has a similar provision for summonses. See TEX. FAM.CODE ANN. § 53.06(c) (Vernon 2002). There is no comparable provision for civil trials generally or for suits affecting the parent-child relationship specifically.
Under the Rules of Evidence, children who "possess sufficient intellect to relate transactions with respect to which they are interrogated" are certainly "persons" who may testify in civil proceedings. See TEX.R. EVID. 601(a). Rule of Civil Procedure 176.2(a) authorizes a civil litigant to obtain a subpoena commanding a "person" to "attend and give testimony at a deposition, hearing, or trial." TEX.R. CIV. P. 176.2(a).
I recognize that there are potential drawbacks to requiring the issuance of subpoenas for child witnesses. The issuance of a subpoena for a child in a child custody proceeding may likely not be conducive to the betterment of the relationship between the parents or between the subpoenaed child and the parent who seeks his or her testimony. There is a risk of abuse in the use of such subpoenas, particularly in suits affecting the parent-child relationship. Nevertheless, the law does not provide another means by which a parent may compel his or her child's testimony. Nor is there reason to believe that an inappropriate subpoena cannot be quashed, a protective order obtained, or appropriate sanctions rendered where necessary or advisable. See TEX.R. CIV. P. 176.6(d), (e), (f).
Had Richard previously subpoenaed his children, the trial court would have been *208 empowered to issue writs of attachment compelling their attendance if they failed to appear. However, because Richard did not subpoena his children, I cannot say that the court abused its discretion by denying Richard's motion to require Valerie to bring the children to the hearing. Cf. Thompson, 380 S.W.2d at 639.
The availability of subpoenas for the children provided Richard due process. See Brooks v. Klevenhagen, 807 S.W.2d 777, 779 (Tex.App.-Houston [14th Dist.] 1991, no writ).
Accordingly, Richard's second and third issues are overruled.

Denial of Continuance
Richard contends in his fourth and fifth issues respectively that the court abused its discretion by denying his oral motion for continuance premised on the absence of a witness and that the denial of the motion violated his right to due process.
The denial of a continuance motion is reviewed under an abuse-of-discretion standard. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 161 (Tex. 2004). If a continuance motion does not comply with Rule of Civil Procedure 251, it will be presumed that the court did not abuse its discretion by denying the motion. See Villegas v. Carter, 711 S.W.2d 624, 626 (Tex.1986); Phifer v. Nacogdoches County Cent. Appraisal Dist., 45 S.W.3d 159, 173 (Tex.App.-Tyler 2000, pet. denied).
Richard's oral continuance motion did not comply with Rule 251, which requires that a continuance motion be "supported by affidavit." TEX.R. CIV. P. 251. Accordingly, no abuse of discretion is shown. See Villegas, 711 S.W.2d at 626; Phifer, 45 S.W.3d at 173.
Richard's failure to take advantage of the available procedures for obtaining a continuance does not equate to a denial of due process. See Brooks, 807 S.W.2d at 779.
Accordingly, his fourth and fifth issues are overruled.

Impeachment of Valerie
Richard contends in his sixth and seventh issues respectively that the court abused its discretion by refusing to permit him to impeach Valerie (1) with prior inconsistent statements and (2) about her opinion of him as a father. He contends in his eighth issue that these limitations on his examination of Valerie violated his right to due process.
A court's evidentiary rulings are reviewed under an abuse-of-discretion standard. See Exxon Pipeline Co. v. Zwahr, 88 S.W.3d 623, 629 (Tex.2002); In re Estate of Robinson, 140 S.W.3d 782, 790 (Tex.App.-Corpus Christi 2004, pet. denied).
Rule of Evidence 613(a), which governs the impeachment of a witness with a prior inconsistent statement, provides:
In examining a witness concerning a prior inconsistent statement made by the witness, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement. If written, the writing need not be shown to the witness at that time, but on request the same shall be shown to opposing counsel. If the witness unequivocally admits *209 having made such statement, extrinsic evidence of same shall not be admitted.
TEX.R. EVID. 613(a).
Rule 613(a) provides the predicate which must be established before a witness may be impeached with a prior inconsistent statement. See In re A.B., 133 S.W.3d 869, 874 (Tex.App.-Dallas 2004, no pet.); Downen v. Texas Gulf Shrimp Co., 846 S.W.2d 506, 512 (Tex.App.-Corpus Christi 1993, writ denied).
Here, Richard asked Valerie whether she had testified in a prior hearing that the divorce decree required her to provide him "with the daycare officials, school officials, and medical officials information." Valerie confirmed that she had so testified. Richard then asked Valerie whether she had provided this information to him, and she testified that she had.[8] Richard did not ask Valerie whether she had testified in the prior hearing that she had not provided the information to him.
Instead, Richard advised the court that he would "like to go over [Valerie's] testimony regarding that matter." The court responded that a transcript of the prior hearing was not available and that Richard did not "need to be going over things we've already gone over." Richard replied that Valerie was "now changing her testimony."
Richard never told Valerie of the contents of her alleged prior inconsistent testimony and never afforded her an opportunity to explain or deny such testimony. See TEX.R. EVID. 613(a); A.B., 133 S.W.3d at 874; Downen, 846 S.W.2d at 512. Because Richard did not lay a proper predicate to impeach Valerie with her alleged prior inconsistent testimony, the court did not abuse its discretion by denying Richard's request "to go over [Valerie's] testimony regarding that matter." Id. Accordingly, we overrule Richard's sixth issue.
Valerie's counsel asked her to give her opinion of Richard as a father before his incarceration. She responded that Richard "had nine affairs" before his incarceration, that they were impoverished, that they had no stable home, and that at times they did not have water available to make formula for their infant twins. Richard did not object to this testimony.
Richard then sought to ask Valerie about her involvement in the alleged affairs. Valerie's counsel objected that the issue was irrelevant because it involved circumstances existing before the entry of the decree sought to be modified. The court sustained the objection.
"[E]vidence regarding changed circumstances is generally relevant only insofar as it reflects a change of circumstances occurring after the date of rendition of the decree sought to be modified." In re C.Q.T.M., 25 S.W.3d 730, 735 (Tex. App.-Waco 2000, pet. denied). Thus, it cannot be said that the court abused its discretion by disallowing this line of questioning.
Nevertheless, Richard notes that the court made an express finding[9] consistent with Valerie's testimony that he "had numerous affairs" during their marriage. However, because evidence of circumstances before the date of the divorce decree *210 is not generally relevant, this finding is immaterial and should be disregarded. See S.E. Pipe Line Co. v. Tichacek, 997 S.W.2d 166, 172 (Tex.1999); Anderson, Greenwood & Co. v. Martin, 44 S.W.3d 200, 216 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Accordingly, Richard's seventh issue is overruled.
Richard also contends that these evidentiary rulings operated to violate his right to due process. We disagree. Rule 613(a) specifies the procedures to follow to impeach a witness with prior inconsistent testimony, and Richard did not follow them. See Brooks, 807 S.W.2d at 779. A litigant's constitutional right to due process does not accord him a right to the admission of irrelevant evidence. See Darnes v. State, 118 S.W.3d 916, 919-20 (Tex.App.-Amarillo 2003, pet. ref'd). Accordingly, Richard's eighth issue is overruled.

Exclusion of Evidence
Richard contends in his ninth and tenth issues respectively that the court abused its discretion by excluding "evidence regarding prior litigation" and evidence regarding "a CPS report against [Valerie]." He contends in his eleventh issue that the exclusion of this evidence violated his right to due process.
Valerie alleged that Richard had engaged in "harassing litigation" since the divorce. Under examination by Valerie's counsel, Richard denied that he has pursued this litigation to harass Valerie. Counsel reminded Richard that the litigation had been going on for five years. Richard then attempted to testify about the history of the litigation, beginning with the first proceeding. The court sustained counsel's objection as follows:
I will sustain the objection. Also, I don't need ya'll  I mean, the file speaks for itself. It's a 23-page docket and 56 volumes of files. I don't need you arguing over what part of it was relevant and not relevant. Just move on.
We perceive no abuse of discretion in this ruling. Accordingly, we overrule Richard's ninth issue.
Richard also sought to introduce evidence of an investigation of Valerie conducted by Child Protective Services in 2001. However, because this is evidence of circumstances before the entry of the divorce decree, it cannot be said that the court abused its discretion by excluding it. See C.Q.T.M., 25 S.W.3d at 735. Accordingly, Richard's tenth issue is overruled.
Because the court did not abuse its discretion in excluding the evidence addressed in Richard's ninth and tenth issues, no due process violation is shown. See Darnes, 118 S.W.3d at 919-20. Accordingly, Richard's eleventh issue is overruled.

Motion for New Trial
Richard contends in his twenty-fourth issue that the court abused its discretion by allowing his motion for new trial to be overruled by operation of law.
Rule of Civil Procedure 321 requires a motion for new trial to "briefly refer to that part of the . . . admission or rejection of evidence . . . which [is] designated to be complained of, in such a way that the objection can be clearly identified and understood by the court." TEX.R. CIV. P. 321. Rule 322 explains that "[g]rounds of objections couched in general termsas that the court erred . . . in excluding or admitting evidence . . . shall not be considered by the court." Id. 322.
Seven of the grounds raised in Richard's motion for new trial concern issues already addressed hereinabove. Because no error requiring reversal has been found with *211 regard to the issues already addressed, the court did not abuse its discretion in permitting Richard's motion for new trial to be overruled by operation of law with respect to these issues.
The other six grounds concern the exclusion of evidence. Some of these have been addressed hereinabove. However, Richard's motion for new trial does not specify the particular evidence which he contends was erroneously excluded. Rather, the motion alleges, for example, "Petitioner's right to due process was violated in that Petitioner was not permitted to introduce newly discovered evidence capable of meeting Petitioner's burden of proof for restricting the residence of Respondent."
Such general references to the alleged erroneous exclusion of evidence, which do not inform the trial court as to what the excluded evidence was, do not satisfy the requirements of Rules 321 and 322. See Gerdes v. Kennamer, 155 S.W.3d 523, 532 (Tex.App.-Corpus Christi 2004, pet. denied). Accordingly, it cannot be said that the court abused its discretion by allowing Richard's motion for new trial to be overruled by operation of law. Thus, his twenty-fourth issue is overruled.
The judgment is affirmed.
Chief Justice GRAY concurring in the judgment with a separate opinion.
Justice VANCE dissenting.
TOM GRAY, Chief Justice, concurring.
The Court issued an opinion reversing this case on November 16, 2005. I dissented to that opinion. The Court's opinion was withdrawn in an order dated January 11, 2006. I now withdraw my dissenting opinion dated November 16, 2005 and substitute this concurring opinion in its place.
Justices Vance and Reyna initially failed, and now fail on rehearing, to address why the merits of Richard's point on appeal should be addressed at all. The only reason I discussed the ability to subpoena a child witness in my dissenting opinion is because the majority framed the issue upon which the case was being reversed as the trial court's refusal to allow Richard's children to testify, treating the issue as though the children were before the trial court when they were not. The problem is that issue is not what was presented to the trial court, nor is it the issue presented to this Court for disposition.
While I can now concur with the result, because the judgment of the trial court is not being reversed on this issue, I write this concurring opinion to address Richard's second issue on appeal, the one he actually presents, to note the unusual procedure leading to the new result and the method described by the trial court regarding the compelled attendance of a child witness as a possible alternative to issuing a subpoena directly upon a child witness, but which must be used with caution. I will address these issues in reverse order. I will then address certain additional aspects of the dissenting opinion.

MOTION FOR REHEARING FILED BY THE TRIAL COURT
In a very unusual procedure, the trial court filed a document titled "Request for Reconsideration of Memorandum Opinion" after a majority of this Court had originally reversed the trial court upon the basis that the trial court had refused to permit the children, the subject of the suit, to testify. The relevant portion of the text of the trial court's request is as follows:
This [Trial] Court does not participate in compelling witnesses to attend hearings unless they have first been subpoenaed *212 to attend and then have refused to honor the subpoena.
Children, through their parents or guardians, are regularly subpoenaed to attend family law matters in this [Trial] Court. If the parent shows up without the child, this [Trial] Court sends them to get the child.
In this case, the [Trial] Court absolutely did not refuse to permit the children to testify, and exception is taken to that ruling. This [Trial] Court knows full well that a competent child witness is entitled to testifythat wasn't the issue here. The issue between Mr. Taylor and the [Trial] Court was him wanting the [Trial] Court to require the children's attendance without them first being subpoenaed through their mother. Mr. Taylor made no showing or claim in his Motion requesting the "children's attendance at trial" that the mother had not or would not honor a properly issued subpoena. (emphasis in original)
While I believe we engage in setting a dangerous precedent by responding to a trial court that has been reversed when the trial court files what is essentially a motion for rehearing, I note that it was, in this case, effective. I also note that the "motion" was verified and that it was properly served on all parties to the proceeding.
While I argued in my original dissenting opinion the majority's original discussion and disposition was erroneous based upon the ability to subpoena witnesses in a civil proceeding, which is now the basis for the lead opinion by Justice Reyna, I note that the procedure outlined by the trial court in its "motion" would be much less traumatic for the children by use of a procedure that would have the effect of compelling the person in possession of a child to bring the child to court. It operates much like a subpoena duces tecum, except that rather than the production of documents, the subpoena requires the parent or guardian that is subpoenaed to bring a child witness with them and appear in court. As the Amarillo Court recently acknowledged, there are not rules that cover every situation that may arise in the course of a legal proceeding. In re Myers, No. 07-06-0050-CV, 2006 WL 305033, 2006 Tex.App. LEXIS 1128 (Tex.App.-Amarillo, Feb. 9, 2006, no pet. h.). That is precisely why trial courts are invested with inherent authority and ample discretion to conduct their court's business. As the court stated:
[A] trial court has great discretion over the conduct of a trial. . . . And, the burden lay with Myers to prove that it clearly abused that discretion before mandamus can issue. . . . This burden is met by showing that the trial court acted unreasonably, arbitrarily, or without reference to guiding principles. . . . [W]e cannot say that the trial court's decision lacked reason. . . . In sum, the procedure of the trial court may be unique, but we cannot say that it exceeds the vast discretion given such bodies in conducting trials. Ever increasing docket loads should stimulate the adoption of creative procedures for speedily addressing disputes. And, we hesitate to interfere with the exercise of those creative efforts so long as they comport with lawful discretion. Because that adopted here does, we deny the petition for writ of mandamus.
Id. at *1, 2, 2006 Tex.App. LEXIS 1128 at *2-4, 6.
In footnote 9 in the dissenting opinion, Justice Vance criticizes the trial court's procedure because the trial court did not notify Richard of it and criticizes me for not explaining why Richard's motion was deficient or inadequate. As noted in the lead opinion, a similar procedure is utilized *213 in the Code of Criminal Procedure and the Juvenile Justice Code. TEX.CODE CRIM. PROC. ANN. art. 24.011(a) (Vernon Supp. 2005); TEX. FAM.CODE ANN. § 53.06(c) (Vernon 2002). The trial court was doing what any good judge does under the common lawlooks for the law applicable to similar fact patterns and applies it to the situation presented. This is the same thing that litigants should do. And the issue is not whether Richard's motion is deficient or inadequate; the issue is whether Richard has shown on appeal that the trial court abused its discretion by denying Richard's motion. Our job on appeal is not to review the sufficiency of the motion. Our job, when an issue is properly raised in the appeal, is to review the trial court's ruling on the motion. And it is not the trial court's, or for that matter this Court's, job to practice law on behalf of litigants who are representing themselves at trial or on appeal. I will note, however, that anything less than compliance with the rules regarding the procedure for subpoenaing a witness as discussed in the lead opinion, including the attempt to use this particular trial court's procedure in another court, may not preserve any issue regarding the failure of a witness to appear.
The rules of civil procedure specify the manner in which a witness in a civil proceeding can be subpoenaed. TEX.R. CIV. P. 176. There is no special procedure for a witness who is a minor. And if these children had continued to be represented by their own counsel, as they were briefly earlier in this extended proceeding, the subpoenas could have been served on their attorney, rather than them individually. TEX.R. CIV. P. 176.5(a).
The dissenting opinion is dismissive of the advisability and ability to subpoena a child witness. Specifically, Justice Vance states that he seriously doubts whether minors have the legal capacity to be served with a subpoena. I, on the other hand, have no doubts that a minor can be served with a witness subpoena in a civil proceeding. I do not believe it is an issue of capacity.
For over 125 years, it has been the law of this State that you can personally serve a minor with a citation to make them a party to a proceeding. "The Courts of this State have always recognized the necessity for personal service upon a minor. In Wheeler v. Ahrenbeak, 54 Tex. 535 (1881), the Court pointed out the necessity of complying with a statutory requirement for service upon a defendant and concluded that such right could not be waived by a minor. . . ." In re M.W., 523 S.W.2d 513, 514 (Tex.Civ.App.-El Paso 1975, no writ).[1] *214 I see no reason to distinguish the ability to serve a minor with a citation for service of process from the ability to serve a minor with a subpoena to appear as a witness. Thus, it may be that the trial court's alternative method will work in any given case, and for some of the reasons noted, a practitioner may want to try an alternative procedure first. But the more careful practitioner, in order to preserve an issue for appeal regarding an absent witness, will want to strictly comply with the rule regarding subpoenaing a witness, just in case the trial court declines to use any alternative procedure.

RICHARD'S SECOND ISSUE ON APPEAL
But as I also stated in my original dissenting opinion, the actual issue in this appeal is not about whether or not the trial court erred by refusing to allow Richard's children to testify at the modification hearing.
The issue Richard actually presents in his brief is as follows: "Whether the trial court erred in denying to hold a qualification hearing and require Appellee to ensure the children were present to testify at trial." Justice Reyna now addresses this issue and issue three with it in the lead opinion. The third issue is: "Whether excluding testimony of the children violated the due process of both United States and Texas Constitutions."
The problem is, as presented on appeal, these issues are not what was presented to the trial court. For example, the children were never presented for a qualification hearing; accordingly, the trial court did not err in not interviewing or qualifying the children to testify. Richard's issues on appeal are broader than the issue presented to the trial court. To the extent the issues are broader, they do not comport with the issue presented and decided by the trial court. Accordingly, to that extent, they present nothing for review.
This leaves us with only one ruling made by the trial court that is arguably challenged by Richard on appeal.

ANALYSIS OF ISSUE TWO
Under his second issue, quoted above, Richard presents some argument that the trial court erred when it denied his motion to compel Valerie to bring the children to trial so that they could testify. I will address this argument as a sub-issue under a liberal reading of his second issue and his brief.
Because no bill of exception was made as to what the testimony of the children would have been, or even as to what Richard thought it would be, Richard did not preserve error based upon the denial of his motion resulting in the absence of a witness. Neither did Richard request a continuance of the hearing so that he could secure the testimony of an absent witness. Richard has thus failed to preserve this issue for review and is unable to show harm as a result of the error, if any. We, therefore, should not address the merits of his second issue.
But if we were to reach the merits of the issue, I note that Richard's motion was not a common or routine motion. He sought to compel his ex-wife, by way of a motion, to bring his children to court for the purpose of having them testify. The trial court denied Richard's motion.
When we are dealing with novel areas of trial court procedure, the trial court has to have wide discretion in dealing with those issues. In re Myers, No. 07-06-0050-CV, 2006 WL 305033, *2, 2006 Tex.App. LEXIS 1128, *6 (Tex.App.-Amarillo, Feb. 9, 2006, no. pet.h.). As discussed above, the trial court uses a procedure in this situation that is authorized by statute for securing *215 the testimony of a child witness in a similar circumstance. The record indicates Richard knew how to subpoena a witness, but he failed to take any action to subpoena the children directly or to subpoena the mother and have her bring the children in her custody to court to give testimony. Based upon the existence of procedures to compel the attendance of witnesses and the existence of similar procedures to compel the attendance of child witnesses, that Richard did not use, we cannot conclude that the trial court acted without reference to guiding principles. Id. The trial court did not abuse its discretion by refusing to make Valerie bring the children to testify in response to Richard's motion.

RESPONSE TO THE DISSENT[2]
The dissenting opinion of Justice Vance reveals two, or possibly three, philosophical differences between Justice Vance and me. I could spend a lot of time explaining and documenting these differences for they have been revealed in many opinions, but in this concurring opinion, I believe it is adequate to simply mention them. The first philosophical difference is who has the burden to show error in an appeal. I believe it is upon the appellant. Richard has not shown trial court error. He has, at best, shown an alternative procedure that the trial court rejected. The second philosophical difference is whether it is appropriate for an appellate court justice to re-lawyer a case for a party, particularly by making arguments for a party which the party did not make in their brief, as a basis for reversing a trial court's decision. I believe it is not the proper role of an appellate judge to re-lawyer a case for a litigantthis causes an imbalance in our advocacy system. A possible third difference that seems to be indicated is whether pro se litigants have a different burden or standard to meet than parties represented by counsel; in particular, is the standard for preservation lower for litigants that are representing themselves? I believe it is the same standard for all parties.
The first paragraph of the dissenting opinion suggests we have to explain why Richard's motion is inadequate. As stated above, that is not the issue, so we should not waste our time with it. The issue is whether the trial court erred in denying the motion, not the adequacy of the motion.
The third paragraph of the dissenting opinion attempts to change the issue, *216 which is what happened in the original majority opinion. Note the attempt to shift the issue from whether the trial court erred in denying the motion to compel Valerie to bring the children, to the issue of the propriety of excluding child witnesses. Child witnesses were not presented. Child witnesses were not excluded.
The fourth and fifth paragraphs of the dissenting opinion attempt to evade the consequences of Richard's failure to show what the testimony would have been and excuse his failure to take any other action to secure the testimony of the children.
The fifth paragraph of the dissenting opinion also attempts to redefine what constitutes a subpoena. The sixth paragraph finds probable harm by again excusing Richard's failure to "make a formal offer of proof."
It is clear that what the dissent would have done as the trial court judge is to grant Richard's motion. That probably would not have been error. But we are not the trial court; and our opinions should focus on the legal issues which are properly presented. Our opinions frequently do not reflect what we would have done if we were the trial court. Our task must remain to conduct a review of what the trial court did, and decide if, under the applicable legal standard, the trial court committed harmful error.

FINAL CONCLUSION
The trial court never denied Richard the opportunity to present his children as witnesses as he argues on appeal. Further, the trial court did not abuse its discretion by denying Richard's motion to compel Valerie to bring the children to court. The court simply denied Richard's request to make Valerie bring the children to the hearing without the issuance of a subpoena. I concur in only the judgment of this Court which affirms the trial court's judgment.
BILL VANCE, Justice, dissenting.
I disagree with the lead opinion's conclusion that Richard should have subpoenaed his own minor children. Nor can I accept the concurring opinion's approval of the trial court's practice of having a parent or guardian served with a subpoena to bring a child witness to court in a civil action without notice to litigants that such a practice must be employed. Moreover, neither opinion explains why Richard's motion for an order compelling Valerie to bring the children to the modification hearing so that they could testify was deficient or inadequate under the circumstances, i.e., why the trial court did not err or abuse its discretion in denying the motion. I therefore respectfully dissent. I would sustain Richard's second issue and hold that the trial court erred or abused its discretion in denying Richard's motion to compel the children's attendance at the hearing.
Richard's motion sought an order from the trial court requiring Valerie to bring their three minor children to the modification hearing so that they could testify on relevant matters.[1] As of the hearing date, *217 Z. was age nine and the twins K.O. and K.M. were age seven years and nine months. The children's testimony, while not controlling, would likely have included vital information on the issues in the modification hearingparticularly evidence relating to their best interestand the removal and modification of rights that Richard complains of in this appeal. See Callicott v. Callicott, 364 S.W.2d 455, 457 (Tex.Civ.App.-Houston 1963, writ ref'd n.r.e.) (stating that 8-year-old boy "was in all probability qualified and very likely in possession of information that might well have been of vital importance in the determination of whether he should be taken from the custody, care and guidance of the father," and he "might well have confirmed or disaffirmed his happy and wholesome homelife in his father's home").
In a written order and without stating any grounds, the trial court denied Richard's motion the day after its filingand without Valerie having filed a response.[2] A trial court has no discretion to refuse to order a child's compelled attendance when that refusal has the obvious effect of excluding a presumptively competent child witness from testifying in a modification proceeding.[3] In the absence of notice to Richard that the trial court would require him to subpoena Valerie to bring the children to the hearing, there was no legal basis for the trial court's refusal to grant Richard's motion to compel the children's attendance so they could be present to testify, and "[f]undamental fairness dictates that a party not be arbitrarily deprived of the right to offer its evidence." Monsanto Co. v. Davis, 25 S.W.3d 773, 785 (Tex.App.-Waco 2000, pet. dism'd w.o.j.).
The lead opinion states that the trial court did not deny Richard the opportunity to call the children as witnesses, asserting that Richard should have had his seven-and nine-year-old children served with subpoenas. But as that opinion concedes,[4] the Texas Rules of Civil Procedure, unlike the Texas Code of Criminal Procedure,[5] do *218 not contain a specific provision for serving a child or a child's custodian with a subpoena.[6]See TEX.R. CIV. P. 176. Notwithstanding whether minors have the legal capacity to be served with a subpoena under Rule 176 (which I seriously doubt), any reluctance on Richard's part to have his seven- and nine-year-old children personally served by a stranger with subpoenas to attend a hearing at which he was trying to have his contact with them increased is understandable.[7] With no existing *219 and applicable specific authority that Richard could have his children personally served with subpoenas or that he could have them served with subpoenas "through" Valerie (or at the least, notice from the trial court that he should serve Valerie), what was Richard to do?[8] Despite his being an imprisoned pro se litigant, Richard did what a reasonable lawyer would do when no specific applicable law existshe asked the trial court for help and to order Valerie to bring the children to the hearing.[9]
In the absence of established law for the subpoena of children in civil matters, Richard's motion was a reasonable (and better) practice under the circumstances to compel the children's attendance and obtain their testimony. More importantly, if one elevates substance over form, Richard complied with the trial court's practice. A subpoena is a "writ commanding a person to appear before a court. . . ." BLACK'S LAW DICTIONARY at 1467 (8th ed.2004). A writ is a "court's written order, . . . commanding the addressee to do or refrain from doing some specified act." Id. at 1640. Richard essentially requested the trial court to issue a subpoena (a written order) commanding Valerie to bring the children to the hearing; he simply did it by a motion-and-order procedure that I believe is preferable in civil child-witness cases. The trial court's denial of Richard's motion was effectively a denial of a request that the trial court issue subpoenas for Valerie to bring the children to the hearing. In effectand again putting substance over formthe trial court's denial amounted to a refusal to allow the children to testify, as there was no other authorized procedure that Richard was made aware of for him to obtain the children's compelled attendance. I would hold that the denial of Richard's motion was an error and, to the extent that discretion existed, an abuse of discretion given the trial court's lack of notice to Richard.[10]
I further would find that the trial court's error probably prevented Richard from presenting his case on appeal (particularly relating to the sufficiency of the evidence) because of the likely importance of the children's testimony relating to their best interest and to the trial court's order. See TEX.R.APP. P. 44.1(a) (judgment should not be reversed upon finding of error unless *220 error probably prevented appellant from presenting his case on appeal); Monsanto, 25 S.W.3d at 786. Because the children were not presentby virtue of the trial court's denial of Richard's motion to compel their attendanceRichard was unable to make a formal offer of proof. Cf. Callicott, 364 S.W.2d at 456-57 (trial court refused to let father make a bill of exception by having child testify).
I would sustain Richard's second issue, reverse the trial court's order nunc pro tunc, and remand this cause for further proceedings.[11]
NOTES
[1] The Legislature amended section 156.101 in 2003, effective September 1, after Richard filed this modification proceeding. However, the amended version of the statute (which is the current version) applies to all actions pending on the effective date. See Act of May 27, 2003, 78th Leg., R.S., ch. 1036, § 23(g), 2003 Tex. Gen. Laws 2987, 2994.
[2] See Findings of Fact Nos. 6 and 7.
[3] Unlike the 2003 amendment to the modification statute (which applies to actions pending on or filed on or after September 1, 2003), the 2003 amendment to the jury statute applies only to actions filed on or after September 1, 2003. See Act of May 27, 2003, 78th Leg., R.S., ch. 1036, § 23(c), 2003 Tex. Gen. Laws 2987, 2994. Thus, the former version of section 105.002 applies here.
[4] The term "binding" is used in contrast with the term "advisory." Although a trial court may not disregard "binding" jury findings under section 105.002(c), the court may (if warranted by the evidence) grant a directed verdict before the jury's verdict is rendered or a new trial afterward. See Fambro v. Fambro, 635 S.W.2d 945, 947 (Tex.App.-Fort Worth 1982, no writ); T.A.B. v. W.L.B., 598 S.W.2d 936, 938 (Tex.Civ.App.-El Paso), writ ref'd n.r.e., 606 S.W.2d 695 (Tex.1980) (per curiam).
[5] This contention apparently relates back to Richard's claim that Valerie does not provide him timely or adequate notice of the children's activities, etc.
[6] This is how Richard characterizes the motion in his brief. The motion is entitled, "Petitioner's Motion for Children's Attendance at Trial."
[7] The dissent characterizes Richard's motion as a request that the trial court issue subpoenas compelling Valerie to bring the children to the hearing. I believe the motion is more appropriately characterized as one requesting the court to issue a writ of attachment compelling the children's attendance.
[8] Richard says in his brief that Valerie "testified that she did provide [him] with the names, addresses and telephone numbers of the children's school, dental, medical and daycare officials." However, this mischaracterizes her testimony. Valerie testified only that she provided him "information" about "daycare officials, school officials, and medical officials."
[9] Finding of Fact No. 37.
[1] See also Wright v. Jones, 52 S.W.2d 247, 251 (Tex. Comm.App.1932, holding approved) ("When an infant is made a party to an action, he must be served with process."); In re Estate of Bean, 120 S.W.3d 914, 920 & 921 (Tex.App.-Texarkana 2003, no pet.) ("They contend personal service on the minor was not necessary because his father appeared as next friend and as guardian ad litem. . . . We sustain Shore's contention that the failure to personally serve citation on Brenham Shore [a minor] deprived the trial court of jurisdiction to enter the declaratory judgment."); Uehlinger v. State, 387 S.W.2d 427, 430 (Tex. Civ.App.-Corpus Christi 1965, writ ref'd n.r.e.) ("The minors herein were named as individual defendants along with their guardian but were not served with citation in the County Court trial. . . . The guardian ad litem was not authorized in such capacity to waive citation of service on the minors after the matter became a case in the County Court pursuant to the State's appeal. . . . Unless jurisdiction of the individual wards had been acquired by proper service of citation (which could not be waived under the conditions prevailing here) the court had no authority to appoint a guardian ad litem or to proceed to trial as to the minors."); Ellis v. Stewart, 24 S.W. 585, 587 (Tex.Civ.App.1893) ("There was no service of citation on the minor defendants, which renders the judgment against them a nullity.").
[2] In footnote 11, Justice Vance states he will not address what he apparently believes are personal comments about him in this opinion. It is my intent to be critical of his legal analysis in this case and in other cases over the past seven years of working with him. These are not intended as what are normally characterized as personal comments. He may consider them personal, depending upon how closely he holds his view on the rules of law he espouses in his opinions, but the criticism is of his legal analysisnot him personally. If I could get him to communicate, exchange, and refine the analysis as much in other cases as we have in this one, I truly believe the ultimate winners would be the citizens of Texas by a thorough venting of all the relevant aspects on important issues. The opinions in this case frame the issue and probe a number of problems. Justice Vance's legal analysis in the dissenting opinion is much better explained and supported with legal authorities than was his original analysis in what was the original majority opinion of the Court. I take partial credit for that improvement due to the number of rounds of critical analysis and rewrites through which his dissenting opinion has gone. It is not personal, it is what good judges do for each other. Whether they agree or disagree, as long as each judge is working for a better productit is a win/win situation for the judges and the citizens of Texas. [See Proverbs 27:17 (The NIV Study Bible): "As iron sharpens iron, so one man sharpens another."] For this reason, I can thank Justice Vance for making me a better servant for the people of Texas.
[1] The gist of Richard's amended petition for modification was to modify the decree to increase his rights and Valerie's duties so that Richard could, under the circumstances of his imprisonment, attempt to have a meaningful relationship with his children. The motion, titled "Petitioner's Motion for Children's Attendance at Trial," requested the children's presence so they could testify about: (1) school, daycare, and home; (2) their relationship with Richard and their desires to visit him; and (3) their ability to identify Richard. It stated that the children's presence was necessary to satisfy "statutory requirements" and that their testimony would assist the court in making decisions on their best interest, and further that Richard would limit his questions according to their ages and development and that he had no intention of questioning the children in a manner that would damage their relationships with Valerie.
[2] The United States Supreme Court has instructed that we hold pro se pleadings and briefs to less stringent standards than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); accord Zuniga v. Zuniga, 13 S.W.3d 798, 803 (Tex.App.-San Antonio 1999, no pet.); Barnes v. State, 832 S.W.2d 424, 426 (Tex.App.-Houston [1st Dist.] 1992, orig. proceeding); Birdo v. DeBose, 819 S.W.2d 212, 216 (Tex.App.-Waco 1991, no writ). Thus, we review such pleadings and briefs "with patience and liberality." Barnes, 832 S.W.2d at 426; accord Birdo, 819 S.W.2d at 216.

After having his motion denied and suffering an adverse ruling in the modification proceeding, Richard fairly, though awkwardly, presents to us in his second issue exactly what he presented to the trial court and asserts that the trial court erred in denying his motion. His second issue reads: "Whether the trial court erred in denying to hold a qualification hearing and require Appellee [Valerie] to ensure the Children were present to testify at trial." I believe that the trial court erred in denying Richard's motion that was filed to ensure the children's presence at trial. In this dissenting opinion, based on my analysis of applicable law, I explain why I believe that the trial court erred in denying Richard's motion and why I would sustain Richard's second issue.
[3] If a child is competent, a trial court does not have discretion to refuse to permit a child to testify in a custody proceeding. Callicott v. Callicott, 364 S.W.2d 455, 457-58 (Tex.Civ. App.-Houston 1963, writ ref'd n.r.e.) (reversing custody change because trial court erred in refusing to allow 8-year-old to testify).
[4] The lead opinion states, "The difficulty here is that there is no statute or rule which provides for the issuance of a subpoena for a child to testify in a civil trial."
[5] Article 24.011 provides in part: "(a) If a witness is younger than 18 years, the court may issue a subpoena directing a person having custody, care, or control of the child to produce the child in court." TEX.CODE CRIM. PROC. ANN. art. 24.011(a) (Vernon Supp.2005). And while not applicable, the summons provision in the Juvenile Justice Code (within the Family Code) provides that a trial court may issue an order that the person having custody of the child bring the child to the hearing. TEX. FAM.CODE ANN. § 53.06(c) (Vernon 2002) ("The court may endorse on the summons an order directing the person having the physical custody or control of the child to bring the child to the hearing.") (emphasis added).
[6] The original opinion in this appealissued on November 16, 2005 with a dissentheld that the trial court erred in denying Richard's motion, reversed the order, and remanded the cause. In re Z.A.T., 2005 WL 3072854 (Tex. App.-Waco Nov. 16, 2005, no pet. h.) (op. withdrawn). Valerie did not file a motion for rehearing or petition for review, but on November 17, the trial court surprisingly filed with us its "motion for reconsideration," asking us to reconsider the issue and to withdraw our opinion. The trial court wrote: "Children, through their parents or guardians, are regularly subpoenaed to attend family law matters in this Court. If the parent shows up without the child, this Court sends them to get the child. . . . The issue between Mr. Taylor and the Court was [his] wanting the Court to require the children's attendance without [their] first being subpoenaed through their mother." Nothing else was filed. The trial court's "motion" in this appealwhether an "unusual procedure" or "dangerous precedent"resulted in the withdrawal of our opinion.

The trial court's practice of allowing parties in family law cases to unilaterally subpoena children through a parent or guardian begs the question in this appeal because no applicable civil statute, rule, or case law specifically authorizes that practice. I do not condemn what may be the trial court's reliance on criminal or juvenile procedure in allowing this practice; indeed, those procedures also support the relief Richard's motion requested. But I cannot condone the trial court's failure to communicate this practice to Richard when it denied his motion. There is no indication that Richard was put on notice of the trial court's practice (a practice that does not square with the lead opinion's conclusion that a child should be personally served with a subpoena in a civil matter). If Richard had been so notified, is there any doubt that he would have attempted to have a subpoena served on Valerie directing her to bring the children to the hearing? Richard now knows what he should have done in this particular trial court to ensure his children's attendance, but that knowledge comes too late. One would reasonably expect adequate notice especially to an imprisoned pro se litigant by the trial court of an unwritten practice specific to this court. This due-process concern is amplified by my belief that retroactive application of either the lead or concurring opinion on this novel issue of first impression produces a substantial inequitable result in this appeal. See Jones v. Clarksville ISD, 46 S.W.3d 467, 472-73 (Tex.App.-Texarkana 2001, no pet.) (discussing factors to determine exception to retroactivity). Not ironically, Richard's second and third issues are briefed under the heading "Denial of Right to Due Process."
[7] Allowing or encouraging partiesespecially those in child-custody disputesto unilaterally have children personally served with subpoenas is, in addition to being legally questionable, also an unnecessary invitation to abuse the system in a way that does not protect children. Until Rule 176 is amended to provide for serving a person having custody, care, or control of the child with a subpoena to produce the child in court, a motion-and-order procedure to compel a child's attendance at a parent-child related hearing better protects the child from the milieu of the legal dispute and deters abuse. The lead opinion unfortunately paves the way for abuse; and even in the absence of abuse, the thought of a process server serving a subpoena on a first grader walking up to an elementary school should give one pause.
[8] An attorney can issue a subpoena. See TEX.R. Civ. P. 176.4(b). Richard, an imprisoned pro se litigant, is not an attorney.
[9] The concurring opinion approves of the trial court's subpoena duces tecum practice for civil cases (and apparently of the trial court's failure to notify litigants like Richard that this practice must be employed to obtain the presence of child witnesses), yet it inexplicably fails to address why Richard's motion-and-order procedure was deficient or inadequate and why the trial court did not err or abuse its discretion in denying the motion without notifying Richard of the practice employed in this trial court. Contrary to that view about how we should review Richard's motion and the trial court's ruling thereon, I believe that in reviewing a trial court's ruling on a motion to determine whether or not the trial court abused its discretion, an appellate court must, as a part of its review of the ruling, examine the substance and adequacy of the motion at issue in light of the applicable law, standard of review, and any special circumstances.
[10] The concurring opinion's statement that the trial court did not abuse its discretion in refusing to make Valerie bring the children to the hearing to testify is conclusory, asserting only that trial courts have wide discretion, that Richard's motion was not "common or routine," and that the trial court did not abuse its discretion. But if a trial court does not have discretion to refuse to permit a child to testify in a custody proceeding, see Callicott, 364 S.W.2d at 457-58, it only follows that a trial court does not have discretion to refuse to compel a child's attendance to testify at a custody proceeding when the obvious effect of that refusal is to exclude the child as a witness.
[11] I have decided not to address the personalized comments in the concurring opinion. The reader will be the judge of whether any of them have merit.