

*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00748-CV

Barbara **GRECO**,
Appellant

v.

Louis F. **GRECO**, Jr.,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-12832
Honorable Gloria Saldana, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Alma L. López, Chief Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed:    August 29, 2008

AFFIRMED

This appeal stems from a divorce proceeding between Appellant Barbara Greco ("Barbara") and Appellee Louis Greco, Jr. ("Louis"). Appellant Barbara Greco raises issues on appeal concerning the wrongful exclusion of evidence, the jury's findings being against the great weight and preponderance of the evidence and jury misconduct. We affirm the judgment of the trial court.

## FACTUAL BACKGROUND

The parties were married in July of 1985. Three children were born of the marriage before the parties separated in 2006. Barbara filed her petition for divorce on August 21, 2006. After entering into an agreement regarding conservatorship, possession and child support, the parties proceeded to trial before a jury regarding the issues of fault in the dissolution of the marriage, fraud on the community, and the value of personal property. The parties proceeded before the trial court on Barbara's request for spousal maintenance.

On June 14, 2007, the jury returned its verdict finding in favor of Louis on the issues before it. The trial court denied Barbara's subsequent request for maintenance and filed findings of fact and conclusions of law in support of its ruling.

## PARTIAL RECORD

Our review of this case is affected, in part, by the lack of a complete record. An appellant must make a written request that the official reporter prepare the reporter's record, designating the exhibits and portions of the proceedings to be included in the record. TEX. R. APP. P. 34.6(b)(1). A copy of this request must be filed with the trial court clerk. TEX. R. APP. P. 34.6(b)(2). A partial reporter's record is available in order to minimize the expense and delay associated with the appellate process. TEX. R. APP. P. 34.6(c)(1); *see Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990). An appellant who requests a partial record must also include a statement of appellate issues to be presented and will be limited on appeal to those points or issues. *See* TEX. R. APP. P. 34.6(c)(1).

Rule 34.6(c)(4) affirmatively states that the partial record is presumed to be complete. TEX. R. APP. P. 34.6(c)(4). Yet, when an appellant entirely fails to present the statement of points or issues, then the presumption that the record is complete for appellate purposes does not

apply, and the appellate court applies the presumption that the material missing from the reporter's record is relevant and supports the trial court's judgment. *Richards v. Schion*, 969 S.W.2d 131, 133 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("When an appellant appeals with a partial reporter's record but does not provide the list of points as required by Rule 34.6(c)(1), it creates the presumption that the omitted portions support the trial court's findings.")

Barbara did not file a statement of appellate issues, timely or otherwise. We, therefore, presume that the testimony presented before the jury, and not included in the reporter's record, supports the jury's verdict and the trial court's judgment.

### EXCLUSION OF EVIDENCE

In her first two issues on appeal, Barbara argues the trial court wrongfully excluded testimony regarding pornographic material found on the home computer and the testimony of their minor child L.G.

### A. Standard of Review

The admission or exclusion of evidence is a matter within the trial court's discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). The standard of review in determining whether a trial court erred in an evidentiary ruling is abuse of discretion. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). In determining whether an abuse of discretion has occurred, we ask whether the trial court acted without reference to any guiding rules or principles, that being whether the court's action was arbitrary or unreasonable. *Downer v. Aqua Marine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). In making this determination, we conduct a review of the entire record. *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992).

**B.      Exclusion of Pornographic Material**

Barbara contests the trial court's exclusion of Exhibit #2, consisting of alleged pornography obtained from the home computer. Louis' counsel objected to the exhibit based on Barbara's lack of personal knowledge regarding its origin. Louis' counsel specifically argued that not only was there no evidence linking the exhibit to his client, but that Barbara had previously testified that their sons also had access to the computer. The trial court sustained the objection and excluded the evidence. Because multiple individuals had access to the computer, the court's determination was neither arbitrary nor unreasonable, and we cannot conclude that the trial court abused its discretion in excluding Exhibit #2.

Barbara also contends that Exhibit #2 was improperly excluded because part of it had been previously admitted, without objection, as Exhibit #1 to establish Louis's attempt to purchase "male enhancement pills." Barbara also contends Exhibit #2 was vital to her proof of cruelty and was impeachment evidence of Louis' "soft spoken" act during his testimony. Yet, none of these objections were presented to the trial court. A timely and specific trial objection that provides the trial court with an opportunity to cure the error is generally a prerequisite to presenting a complaint on appeal. TEX. R. APP. P. 33.1(a). Because these objections were never presented to the trial court, they are not preserved for appellate review. *Id*.

**C.      Exclusion of L.G.'s Testimony**

Barbara contends the trial court erred in excluding the testimony of her seventeen-year-old son, L.G., regarding evidence that would impeach Louis on several different issues. Specifically, Barbara contends, L.G.'s testimony would have impeached Louis with regard to her affair with the high school coach, Louis' acts of cruelty on Barbara, the source of the

pornographic material and the value of the items taken from the garage.  Outside the presence of the jury, the trial court stated to Barbara's trial counsel:

Court:      I think that [L.G.] is going to take my suggestion and just not be a witness, okay?
Counsel:   Okay.
Court:      Well, mostly because I said he couldn't be, okay?
Counsel:   Okay.

There were no objections by either party.  Over four months later, Barbara's counsel submitted a Bill of Exception consistent with her arguments on appeal.

### 1.     *Exclusion of Testimony*

It is well settled that a trial court has broad discretion in considering testimony and evidence, with regard to what conditions are detrimental or advantageous to the children for the purpose of deciding issues of custody in a divorce proceeding.  *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.); *Brown v. Brown*, 500 S.W.2d 210, 213-14 (Tex. Civ. App.—Texarkana 1973, no writ).  Moreover, an abuse of discretion must appear from the record as a whole before the judgment will be disturbed.  *Mumma v. Aguirre*, 364 S.W.2d 220, 223 (Tex. 1963).   This discretion, however, does not apply to a determination by the trial court of whether it would be in the best interest of the child to testify in a custody suit.

"[T]he discretion of the trial court in custody cases applies to the determination of the court as to the best place to place the child for his or her future welfare, but does not apply to a determination by the court of whether it would be in the best interest of the child to testify. Where a child of competent qualifications under the rules of evidence is called to testify, the trial court does not have within his discretion the right to refuse to permit such child to testify."

*Callicott v. Callicott*, 364 S.W.2d 455, 458 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.).

Just like in *Callicott*, Barbara argues that seventeen-year-old L.G. was qualified to testify and in possession of information that may have aided the jury, including the effects of his parents actions at his school, his father's abusive nature toward his mother, his father showing and providing him with pornographic material, his father's admission that he was dating another person and the potential value of the items taken from the garage. *Id*. at 457.

2.      *Preservation of Error*

To preserve error on appeal, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefore, and obtain a ruling that appears in the record. TEX. R. APP. P. 33.1(a) (citing *Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999)). An appellant must provide the trial court an opportunity to rule on the same complaint argued on appeal by making that complaint to the trial court. TEX. R. APP. P. 33.1. Here, the record suggests that there was a conference between the trial court and the witness. Nothing from this conference, however, was included in the record. Therefore, even if we interpret the record such that Barbara's counsel tendered L.G. as a witness, when the trial court excluded the testimony, no objection was made. In fact, counsel's response was simply "Okay." Thus, counsel failed to lodge a timely and specific objection providing the trial court an opportunity to resolve the legal issue before rendering judgment. *McKenzie*, 997 at 280. This issue was, therefore, not preserved for appellate review. Importantly, however, even absent waiver, Barbara has failed to show any harm.

3.      *Harm Analysis*

If error is found in the admission or exclusion of evidence, we examine the entire record to assess the harm caused by the error. *See Cortez v. HCCI-San Antonio, Inc.*, 131 S.W.3d 113,

119 (Tex. App.—San Antonio 2004), *aff'd*, 159 S.W.3d 87 (Tex. 2005). To reverse a judgment based on the admission or exclusion of evidence, a party must show the trial court erred and that the error was reasonably calculated to, and probably did, cause the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1); *Alvarado*, 897 S.W.2d at 753; *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 52 (Tex. App.—San Antonio 2006, no pet.). Accordingly, the appellant must demonstrate that the excluded evidence was both controlling on a material issue and not cumulative of other evidence. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *Crescendo Invs., Inc. v. Brice*, 61 S.W.3d 465, 477 (Tex. App.—San Antonio 2001, pet. denied). Moreover, erroneous evidentiary rulings are generally not harmful unless the case turns on the particular evidence in question. *Alvarado*, 897 S.W.2d at 753-54; *Sommers v. Concepcion*, 20 S.W.3d 27, 41 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

In the present case, because Barbara requested only a partial record, we must presume the remaining witnesses' testimony supported the jury's findings and the trial court's judgment. On appeal, Barbara asserts the testimony would have placed Louis in an "entirely different light with the jury." We must, however, presume that the testimony of the other witnesses supported the jury's determination with regard to the effect of the adultery on the marriage, the allegations of Louis's cruelty, the source of the pornography and the value of the items in the garage. Accordingly, even assuming the issue was preserved, we cannot, on the record before us, determine that any such error caused the rendition of an improper judgment. TEX. R. APP. P. 44.1 (a)(1). We, therefore, overrule Barbara's issue on appeal.

### SUFFICIENCY OF THE EVIDENCE

Barbara next contends the jury's findings of: (1) failure to find fraud on the community; (2) determination that adultery was the cause of the dissolution of the marriage; and (3) failure to

find cruelty as the cause of the divorce are against the great weight and preponderance of the evidence. Additionally, Barbara argues there was no evidence to support the jury's determination of the value of the property removed from the garage and that the trial court erred in failing to award spousal maintenance. We address each issue individually.

**A.      Standard of Review**

When a party attacks the factual sufficiency of an adverse finding, we examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We must consider all the evidence and determine whether the adverse finding is so weak and against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id*.

A "no evidence" or legal insufficiency point is a question of law that challenges the legal sufficiency of the evidence to support a particular fact finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In determining whether the evidence is legally sufficient to support a fact-finder's determination, we must determine whether the evidence before the court would allow reasonable and fair-minded people to find the facts at issue. *Id*. We consider all of the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *Id*. Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

**B.      Fraud on the Community**

Barbara asserts two community fraud issues: (1) Louis maintained a bank account that diverted part of his salary and in which he placed proceeds of his side business; and (2) Louis

transferred the "Nassau Property" to his mother during the course of the marriage. Because the jury charge was not included in the clerk's record, the only evidence of the jury's determination is found in the reporter's record of the trial court's oral pronouncement of the jury verdict. In such, the jury answered in the negative to question number five—"Did Mr. Greco commit fraud with respect to the community property rights of Mrs. Greco?"

A fiduciary duty exists between a husband and a wife regarding the community property controlled by each spouse. *Zieba v. Martin*, 928 S.W.2d 782, 789 (Tex. App.—Houston [14th Dist.] 1996, no writ). Although a spouse has the right to dispose of community property under his or her control, he may not dispose of his spouse's interest in community funds if actual or constructive fraud exists. *Mazique v. Mazique*, 742 S.W.2d 805, 807-08 (Tex. App.—Houston [1st Dist.] 1987, no writ). "Fraud on the community" is a judicially created concept based on the theory of constructive fraud and is applied when there is a breach of a legal or equitable duty, which violates this fiduciary relationship existing between spouses. *Zieba*, 928 S.W.2d at 789. Although not actually fraudulent, any such conduct in the marital relationship is termed fraud on the community because it has all the consequences and legal effects of actual fraud. *Id.*

Constructive fraud, does not require an intent to defraud, but is instead the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship. *Id.*; *Jean v. Tyson-Jean*, 118 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). A presumption of constructive fraud arises when one spouse disposes of the other spouse's interest in community property without the other's knowledge or consent. *Jean*, 118 S.W.3d at 9; *Mazique*, 742 S.W.2d at 808. The disposing spouse then bears the burden of proof to show fairness in disposing of community assets. *Zieba*, 928 S.W.2d at 789; *see also*

*Morrison v. Morrison*, 713 S.W.2d 377, 379 (Tex. App.—Dallas 1986, writ dism'd); *Horlock v. Horlock*, 533 S.W.2d 52, 55 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ dism'd w.o.j.).

Barbara presented evidence at trial that Louis diverted part of his salary and proceeds of his side business into a bank account that she did not know existed and that he transferred the title to the house on Nassau to his mother during the course of their marriage without her knowledge or consent. Louis testified at trial and admitted to withholding the money from his account, but testified that Barbara knew about the bank deposits and that the money was used for his living expenses when they were separated. Additionally, contrary to Barbara's assertion that Louis purchased other real estate with marital assets, Louis explained that his mother purchased the house and put both of their names on the title. It was his understanding that he was going to make the necessary repairs on the house in order to convert the property to a rental. However, after he was unable to spend the necessary time at the residence, his mother hired contractors to perform the work and he deeded his interest in the property to his mother.

After considering all of the evidence, and deferring to the fact-finder for issues of credibility, we conclude that a reasonable trier of fact could have found Louis' actions were fair and within the scope of his authority. As such, we hold that the jury's determination was not so weak and against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain,* 709 S.W.2d at 176. Accordingly, we overrule this issue on appeal.

**C.     Cruelty as Cause of the Divorce**

Barbara next contends that the jury's answer in the negative to question number one— "Do grounds exist for divorce on the basis of cruelty of Mr. Greco against Mrs. Greco"—was against the great weight and preponderance of the evidence. The grounds for a fault-based divorce specifically include cruelty and adultery. TEX. FAM. CODE ANN. §§ 6.002-.003 (Vernon

2006). Cruelty is defined "as willful and persistent infliction of unnecessary suffering, whether in realization or apprehension, whether of mind or body, [citations omitted], and as acts that endanger or threaten life, limb or health of the aggrieved party and inflict mental anguish." *Brown v. Brown*, 704 S.W.2d 528, 529 (Tex. App.—Amarillo 1986, no writ); *see also Mathisen v. Mathisen*, 01-92-0970-CV, 1993 WL 330998, at *6 (Tex. App.—Houston [1st Dist.] Aug. 31, 1993, no writ).

Testimony before the jury was conflicting. During her testimony, Barbara complained that Louis: (1) called her Ethel (the name of her sister-in-law), (2) teased her and the boys about presents that he had not purchased, (3) refused to spend time with his family, (4) called her a derogatory name after arriving home to find the house on fire, and (5) lacked concern about her welfare after the divorce. In response, Louis explained that he was simply teasing his family and did not intend to be mean or cruel, that he worked long hours and spent time helping his mother and brother and that his concern was for his children rather than his adulterous wife. Barbara points to her bill of exception, including L.G.'s affidavit to substantiate the cruelty. However, because we are presented with a partial record, we must presume the testimony of the remaining witnesses substantiated the jury's determination. Accordingly, we cannot say the evidence is so weak and against the great weight and preponderance of the evidence that the jury's failure to find cruelty as the basis of the divorce is clearly wrong and unjust. *Cain,* 790 S.W.2d at 176. We, therefore, overrule this issue on appeal.

**D.     Adultery was Cause of the Dissolution of the Marriage**

Barbara next contests the sufficiency of the evidence to support the jury's finding that "grounds exist for divorce on the basis of the adultery of Mrs. Greco." During her testimony, Barbara explained that she had a friendship with the boys' school coach and that on one evening,

in April of 2005, she was drunk and had a one-time affair with the coach.  Louis, who suspected infidelity, followed Barbara to her friend's house and actually caught, and videotaped, Barbara and the coach together.  We defer to the fact-finder's determination with regard to credibility and weight to be given their testimony and conclude that the evidence is factually sufficient to support the jury's finding of adultery as a basis for the divorce.  *See* TEX. FAM. CODE ANN. § 6.704(b) (Vernon 2006).

### E.   Value of the Property in the Garage

In her next appellate issue, Barbara asserts that there is no evidence to substantiate the jury's finding that the property in the garage was only worth $2,000.00.[1]  "It is well settled that a property owner may opine about the property's value." *Gulf States Util. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002).  Moreover, a party that does not provide values for property, may not complain on appeal that the fact-finder lacked sufficient evidence to value the property. *Compare Deltuva v. Deltuva*, 113 S.W.3d 882, 887 (Tex. App.—Dallas 2003, no pet.) *with Sandone v. Miller-Sandone*, 116 S.W.3d 204, 207-08 (Tex. App.—El Paso 2003, no pet.) (holding that when the parties fail to put on any evidence of value, no "just and right" division can be determined).

Here, neither Barbara nor Louis could provide an itemized list of the items and their value that were taken from the garage.  Both parties were questioned extensively and provided their best estimate of the values, while the attorneys created charts and lists, about the items in each other's possession.  Considering all of the evidence in the light most favorable to the jury's determination, there is more than a scintilla of evidence to support the jury's finding and a

---

[1]  Although Barbara presents the issue as the property in the garage was only worth $2,000.00, the actual question to the jury was:  "State in dollars the value each of the following items:  Community property taken or placed in two storage facilities."  The jury's answer was $2,500.00.

reasonable fact-finder could have determined that the value of the property in question was worth $2,500.00. We, therefore, overrule this appellate issue.

**F.      Spousal Maintenance**

In her last sufficiency point, Barbara asserts that the trial court abused its discretion by failing to grant her spousal maintenance. A trial court may award spousal maintenance if the parties were married ten years or longer, and the spouse seeking the maintenance lacks sufficient property to provide for the spouse's minimum reasonable needs. *See* TEX. FAM. CODE. ANN. § 8.051 (Vernon 2006). The determination of a spouse's "minimum reasonable needs" is fact-specific and made on a case-by-case basis. *Amos v. Amos*, 79 S.W.3d 747, 749 (Tex. App.—Corpus Christi 2002, no pet.).

There is, however, a general presumption that spousal maintenance is not warranted "unless the spouse seeking maintenance has exercised diligence in: (1) seeking suitable employment; or (2) developing the necessary skills to become self-supporting during a period of separation and during the time the suit for dissolution of the marriage is pending." TEX. FAM. CODE ANN. § 8.053(a) (Vernon 2006). The purpose of spousal maintenance is to provide temporary and rehabilitative support for a spouse whose ability for self support has deteriorated over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *O'Carolan v. Hopper*, 71 S.W.3d 529, 533 (Tex. App.—Austin 2002, no pet.). The guidelines to be used in determining the maintenance award include, but are not limited to, the financial resources, age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance; the education and employment skills of both spouses; and the comparative financial resources of the spouses. *See* TEX. FAM. CODE ANN. § 8.052 (Vernon 2006).

In the present case, there is no question that the parties were married for more than ten years. Each of the parties testified at great length about their monthly expenses and income. Barbara was awarded $1,000.00 per month in child support, but testified that her monthly needs amounted to $4,000.00 per month. She also testified that she was currently earning approximately $6.00 per hour. The parties had joint possession of the children. Moreover, the trial court awarded Barbara the money in her checking account and the joint savings account, 100% of the Nationwide Retirement Account (approximately $37,000) and 50% of the CPS retirement account. The trial court further found that Barbara possessed sufficient training, skills, and education to maintain gainful employment, did not have an incapacitating physical or mental disability, and the children did not require substantial care or personal supervision. Additionally, the trial court noted the jury's finding that the cause or contributing cause of the divorce was Barbara's adultery.

With regard to spousal maintenance, the trial court was the sole judge of the witnesses' credibility and demeanor. Additionally, we remain mindful of the statutory presumption that spousal maintenance is not warranted and hold that the trial court's refusal to award the same is not an abuse of discretion.

### JURY MISCONDUCT

In her final issue on appeal, Barbara argues that the Spurs championship basketball game, and the jurors' desire to be home in time to watch it on television, was an outside influence amounting to jury misconduct. Juror misconduct warrants a new trial if the moving party establishes the misconduct (1) occurred, (2) was material, and (3) probably caused injury. *See* TEX. R. CIV. P. 327(a); *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000). Determination of whether jury misconduct occurred is a question of fact for the trial court, and if

there is conflicting evidence on the issue, the trial court's finding must be upheld on appeal. We review a trial court's ruling on a motion for new trial based on jury misconduct for abuse of discretion, and only reverse upon a clear showing of abuse of discretion. *Vela*, 203 S.W.3d at 47-48; *see also In the Matter of J.F., Jr.*, 948 S.W.2d 807, 809 (Tex. App.—San Antonio 1997, no writ) (applying presumption that jury followed instructions absent evidence of jury misconduct, i.e., an outside influence that affected the verdict). An abuse of discretion will be found when the trial court's ruling is arbitrary, unreasonable, or without reference to guiding principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997).

An outside influence must come from outside the jury and its deliberations and does not include: "information not in evidence, unknown to the jurors prior to trial, acquired by a juror and communicated to one or more other jurors between the time the jurors received their instructions from the court and the rendition of the verdict;" nor does it include "[i]nformation gathered by a juror and introduced to the other jurors by that juror, even if the information were introduced specifically to prejudice the vote. . . ." *Soliz v. Saenz*, 779 S.W.2d 929, 931-32 (Tex. App.—Corpus Christi 1989, writ denied).

The foreman's affidavit stating that other jurors discussed the Spurs game and their desire to be home in time to watch the basketball game was not evidence of any outside influence, but only described matters on the minds of other jurors during deliberations. The affidavit is, therefore, incompetent to serve as evidence of juror misconduct. *See* TEX. R. CIV. P. 327(b) (stating that juror's affidavit "concerning matters about which he would be precluded from testifying" may not be received as evidence). Because outside influence must emanate outside the jury deliberations, and information introduced by a juror to the rest of the panel fails to constitute outside influence, the record fails to show juror misconduct. *See Golden Eagle*

*Archery*, 24 S.W.3d at 370; *Fish v. Bannister*, 759 S.W.2d 714, 722 (Tex. App.—San Antonio 1988, no writ) (proof must establish outside influence resulted in jury misconduct which was material and resulted in harm). We, therefore, hold that the trial court did not abuse its discretion in finding against Barbara and overrule this appellate issue.

## CONCLUSION

Based on the evidence in the record, and the presumption that any untranscribed testimony is relevant and supports the judgment, we hold that the evidence is sufficient to support: (1) the jury's failure to find fraud on the community; (2) the jury's failure to find grounds for divorce based on Louis' cruelty; (3) the jury's finding that Barbara's adultery was the cause for the dissolution of the marriage; (4) the jury's finding regarding the value of the property taken from the garage; and (5) the trial court's denial of spousal maintenance for Barbara. Additionally, the record fails to show an outside influence amounting to jury misconduct. Finally, the trial court properly excluded Exhibit #2 and the exclusion of the testimony of L.G. was waived, but even if not, based on the entire record, the error was harmless. We, therefore, affirm the judgment of the trial court.

Rebecca Simmons, Justice